No. 15-30044
_____

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT
_____

**CAROLE K. BROWDY, Medical Doctor,**
**Plaintiff-Appellant**

**VERSUS**

**HARTFORD LIFE & ACCIDENT INSURANCE COMPANY; GROUP SHORT TERM DISABILITY AND LONG TERM DISABILITY PLAN FOR EMPLOYEES OF AEROSPACE TESTING ALLIANCE-SALARIED,**
**Defendants-Appellees**
_____

**On Appeal from the United States District Court**
**for the Middle District of Louisiana**
**USDC Civil Action No. 3:11-CV-00818-SDD-SCR**
_____

**REPLY BRIEF FILED ON BEHALF OF**

**PLAINTIFF-APPELLANT**

J. Arthur Smith, III
SMITH LAW FIRM
La. Bar Roll No. 07730
830 North Street
Baton Rouge, LA  70802
Telephone: (225) 383-7716
Facsimile: (225) 383-7773
E-mail: jasmith@jarthursmith.com
*Attorney for Carole K. Browdy, M.D.*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................i

I.   INTRODUCTION..................................................................1

II.  LAW AND ARGUMENT...........................................................3

    A. The Defendant Breached its Fiduciary Duty ..................................3

        i.  Any "New" Evidence relied upon by Hartford on the
           Plaintiff's Appeal of Hartford's Denial of Her
           Short-Term Disability Benefits was merely
           Superfluous ...........................................................................8

        ii. The Defendant was Unjustly Enriched as a result of its
           Breach of its Fiduciary Duty ...................................................9

    B. Plaintiff's §1132(a)(3) Claim is not Precluded...............................10

        i.  Defendant's Misstatements of Fact .......................................11

        ii. The Plaintiff's § 1132(a)(3) Claim is not a Repackaged
           § 1132(a)(1)(B) Claim .........................................................15

III. CONCLUSION.....................................................................17

CERTIFICATE OF SERVICE ...............................................................18

CERTIFICATE OF COMPLIANCE ........................................................19

TABLE OF AUTHORITIES

<u>FEDERAL CASES</u>:

*Bodine v. Employers Casualty Co.*, 352 F.3d 245 (5th Cir. 2003) .................5

*Gearlds v. Entergy Services, Inc.,* 709 F.3d 448 (5th Cir. 2013) ....................5, 11

*Hobbs v. Baker Hughes Oilfield Operations, Inc.,*
294 Fed.Appx. 156 (5th Cir. 2008)...................................................................5

*In re Enron Corp. Securities, Derivative & ERISA*
*Litigation*, 284 F.Supp.2d 511 (S.D. Tex 2003) ............................................4, 5

*Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 128 S.Ct. 2343
171 L.Ed.2d 299 (2008) ...................................................................................8

*Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d
465 (5th Cir. 2010) ............................................................................................7, 8

<u>FEDERAL STATUTES AND REGULATIONS</u>:

29 U.S.C. §1104(a)(1)(B) .........................................................................1,4
29 U.S.C. §1132(a)(3) ..................................................... 1, 2, 3, 11, 12, 13, 16, 17
29 U.S.C. §1132(a)(1)(B) ...........................................2, 8, 11, 12, 13 14, 15, 16, 17
29 C.F.R. § 2560.503-1(f)(3) ........................................................................3

## I.    INTRODUCTION

In its Opposition Brief, the Defendant makes several misstatements of fact and law that are misleading to this Honorable Court. First, the Defendant erroneously argues that its adverse determination of the Plaintiff's eligibility for short-term disability benefits ("STD benefits") is not a breach of fiduciary duty because it did not act intentionally or in bad faith. The Plaintiff respectfully disagrees and has also submitted evidence of the Defendant's bad faith (i.e. - Hartford actively and recklessly choosing to disregard the definitive evidence in its possession of the Plaintiff's eligibility and instead relying on an earlier fact issue as a basis for its denial). The Plaintiff further submits that if all that is required of a fiduciary is to not act intentionally or in bad faith, then that is inconsistent with the enumerated ERISA fiduciary duty found in section 1104(a) and results in an ERISA fiduciary having almost no duty at all - certainly not a fiduciary one.

Second, the Defendant makes several misstatements of fact in an attempt to support its argument that the Plaintiff's §1132(a)(3) claim is precluded. First, the Defendant, in so arguing, wholly ignores the allegations in the Plaintiff's Complaint regarding the Defendant's breach of its fiduciary duty. (ROA.17-29). Second, at pages 8-9 of its brief, the Defendant erroneously claims that it had the right to offset the Plaintiff's benefits by the amount of her available pension even if

she did not apply for and receive them. However, this assertion is not supported by the record (which the Defendant fails to cite) and is completely erroneous.

Moreover, the Defendant focuses on only a narrow portrayal of the Plaintiff's § 1132(a)(3) claim in arguing that the Plaintiff's claims are a repackaging of an § 1132(a)(1)(B) claim. As previously briefed by the Plaintiff, the Defendant would not have obtained the offset for pension payments received by Dr. Browdy's pursuant to Plaintiff's long-term disability benefits ("LTD benefits") but for the Defendant's misrepresentation of the Plaintiff's ineligibility for STD benefits. In this case, the Plaintiff seeks the payment of the benefits wrongfully withheld under the LTD policy by the Defendant as a result of its earlier breach of fiduciary duty under the STD policy. An § 1132(a)(1)(B) claim is not viable for recovery of this money, as the LTD plan specifically allows for the offset of retirement benefits received by the Plaintiff. However, this money is the basis for the Plaintiff's § 1132(a)(3) claim as the Defendant's withholding of this amount is an unjust enrichment resulting from its earlier breach of fiduciary duty. This claim is not a repackaging of an § 1132(a)(1)(B) claim, as this money is technically allowed to be offset under the terms of the LTD plan. Instead, the Plaintiff brings this § 1132(a)(3) claim in part to obtain a disgorgement of ill-gotten profits to prevent the Defendant's unjust enrichment.

## II.   LAW & ARGUMENT

In this case, the Plaintiff asserts a claim under ERISA § 1132(a)(3) for Hartford's breach of its fiduciary duties regarding (1) its misrepresentation to the Plaintiff that she was ineligible for STD benefits, when she was clearly eligible as reflected by the Defendant's own preliminary approval of coverage and the great weight of the evidence in its possession, (2) its failure to timely approve and pay the Plaintiff's STD benefits in accordance with the time limitations contained in 29 C.F.R. § 2560.503-1(f)(3), and (3) its internal conflict of interest that prevented Hartford from exercising its fiduciary duties for the sole benefit of the Plaintiff. This breach resulted in the Plaintiff being compelled to withdraw her Dow pension benefits early and in turn suffer a significant economic detriment - both in terms of devaluation of the pension and in terms of Hartford's offset of disability benefits that Dr. Browdy would have otherwise received (without resorting to her retirement pension). This breach resulted in the Defendant being unjustly enriched when it withheld the Plaintiff's LTD benefits to offset for the Plaintiff's pension benefits that she would not have been receiving but for the Defendant's misrepresentation.

### A. The Defendant Breached its Fiduciary Duty

ERISA § 1104(a)(1)(B) states that a fiduciary, such as Hartford, shall discharge its duties with respect to a plan solely in the interest of the participants

and beneficiaries and "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." In its brief, the Defendant alleges that its adverse determination of the Plaintiff's eligibility for STD benefits is not a breach of fiduciary duty simply because it did not act intentionally or in bad faith in misrepresenting the Defendant's eligibility. The Plaintiff respectfully submits that this allegation is without merit.

As briefed in her original brief to this Court, the Plaintiff respectfully submits that bad faith should not be the threshold test for a breach of fiduciary duty as it is incongruous with the fiduciary standard enumerated at § 1104(a)(1)(B) and in *In re Enron Corp. Securities, Derivative & ERISA Litigation*, 284 F.Supp.2d 511, 546-47 (S.D.Tex. 2003). While the Defendant notes that the facts of the *In re Enron* case are very egregious and establish a clear violation of the fiduciary duty standard, the Plaintiff respectfully submits that the facts of that case, which constitute one of the most outrageous financial scandals in recent history, should not provide the threshold standard for a breach of fiduciary duty. If all that was required of Hartford was to not act in a similar manner to the Enron fiduciaries, then the duty owed by Hartford to the Plaintiff would be nothing more than the duty not to commit fraud. That would be inconsistent with a fiduciary and is

simply not the law. The Plaintiff respectfully submits that her reliance on the holding of *In re Enron* is well placed as the court in that case set forth a well reasoned and thorough explanation of the duties of a fiduciary, which are not limited to only avoiding intentional deception of plan beneficiaries. The Plaintiff's position is further supported by the holding in *Hobbs v. Baker Hughes Oilfield Operations, Inc.*, 294 Fed.Appx. 156 (5th Cir. 2008) and in *Bodine v. Employers Casualty Co.*, 352 F.3d 245 (5th Cir. 2003) where this Court held that a plaintiff in an action for breach of fiduciary duty under ERISA must present evidence of "deceptive practices, misrepresentation, **OR** other acts that constitute a breach of fiduciary duty under ERISA." (emphasis added) It is evident from these cases that negligence by the plan administrator is not enough to establish a breach of fiduciary duty. And absent from these cases is an enumerated requirement of intentional action and/or bad faith.[1] The Plaintiff respectfully submits that the actions of the Defendant in this case constitute more than mere negligence and show a breach of fiduciary duty.

Moreover, the Plaintiff respectfully submits that even if this Court determines that bad faith is the threshold standard to establish a breach of fiduciary duty, the Plaintiff has set forth evidence to satisfy this standard. (See Plaintiff's

---

[1] This is especially true considering the facts in *Gearlds v. Entergy Services, Inc.*, 709 F.3d 448 (5th Cir. 2013). In that case, the fiduciary misrepresented Gearlds' eligibility for medical coverage under the plan. Importantly, however, there was no evidence in that case of any intentionally deceitful or fraudulent practices. Instead, the facts there suggested a reckless indifference to Gearlds' medical coverage status that caused him damage.

Original Brief at pp. 29-36) (ROA.35-37, 704-07, 951, 955, 984-94, 999-1000, 1073-87). Specifically, the Plaintiff has set forth evidence that the Defendant actively, and recklessly (if not intentionally) ignored the great weight of the evidence in its possession when it chose to reject its preliminary approval of STD benefits and decided instead to deny the Plaintiff's STD benefits, misrepresenting the Plaintiff's eligibility. Essentially, Hartford - inconsistent with its duties as a fiduciary - looked for any way to deny the Plaintiff's benefits and manufactured an alleged ambiguity regarding Dr. Browdy's last date of employment and her first date of disability. The Plaintiff, however, respectfully submits that there was no real ambiguity. Simply because the Plaintiff's last day of employment and her first day of disability are the same, does not create an ambiguity. That is especially so when other information in the possession of Hartford diffused any potential ambiguity. It was Hartford, acting as a fiduciary, who then actively chose to disregard the definitive evidence in its possession that Dr. Browdy's disability caused her inability to work and instead rely on this fact issue as a basis for a denial of the Plaintiff's STD benefits. In so doing, Hartford, at a minimum, actively and recklessly weighed this alleged ambiguity against the other definitive evidence in its possession which showed the Plaintiff was employed at the time she became disabled – in complete contravention of its fiduciary duty.

Moreover, Hartford's conflict of interest is a factor in determining its breach of fiduciary duty, as it administered and paid ***both*** the STD and LTD policies. (ROA.425-26). This Court in *Schexnayder v. Hartford Life and Acc. Ins. Co.*, 600 F.3d 465, 47-71 (5th Cir. 2010), has recognized Hartford's internal conflict of interest and has found that "Hartford, as the administrator and insurer of the disability plan, potentially benefits from every denied claim." Here, a decision by Hartford to initially deny the STD plan (and perhaps later reverse its decision on appeal) could only benefit Hartford's bottom-line on the LTD plan as it allowed for the chance that the beneficiary would be compelled to resort to "other income" in light of the initial STD denial.[2] Hartford is of course held to know the terms of its own policies. Its LTD policy's definition of "Other Income Benefits" included an offset for payments from a retirement pension although the STD policy's definition did not. Hartford stood to gain by denying the STD benefits until Dr. Browdy was compelled to (and indeed did) resort to "other income" that might be subject to offset in the LTD policy. Thus, the decision to pay or not to pay the STD benefits timely - the decision to abide by its fiduciary duties under the STD policy or not - affects Hartford's bottom-line on the LTD policy, because the benefits under the LTD policy, as well as the STD policy, come directly from Hartford. (ROA.425-

---

[2] Of course, a single mother with a special needs child might be just the type of insured most likely to do that. Hartford knew of these facts from a letter faxed from Dr. Rathbun to Hartford prior to denial of the STD benefits. (ROA.36-37)

26).  As briefed by the Plaintiff in her original brief, Hartford's conflict of interest is a motivating factor (evidence of bad faith, deliberate/intentional conduct, or at a minimum reckless disregard) for its breach of fiduciary duty even though Hartford accomplished the breach and resulting unjust enrichment through a "one-two punch" that technically met the separate terms of the STD and LTD policies (making relief unavailable under § 1132(a)(1)(B)). See *Schexnayder*, *supra*. at 470; See also *Metro. Life Ins. Co. v. Glenn,* 554 U.S. 105, 128 S.Ct. 2343, 2351, 171 L.Ed.2d 299 (2008).

### i. Any "New" Evidence relied upon by Hartford on the Plaintiff's Appeal of Hartford's Denial of Her Short-Term Disability Benefits was merely Superfluous.

Repeatedly throughout its brief, the Defendant alleges that its decision on the Plaintiff's appeal was based on new evidence previously unknown to the Defendant. However, for reasons previously briefed by the Plaintiff, this allegation is without merit. (See Plaintiff's Original Brief at pp. 36-38). In short, such "new" information was cumulative and not material, as it did not change the fact that the evidence submitted prior to Hartford's initial determination (medical records, information submitted by the Plaintiff's treating physicians, and information submitted by the Plaintiff) clearly established that the Plaintiff became disabled prior to the termination of her employment.  Indeed, she could not be terminated on 8/31/07 unless she was employed on 8/31/07.  Nothing in Hartford's file

suggested that this was some acute, new and abrupt medical condition that arose on the afternoon of 8/31/07 after Dr. Browdy was terminated. Hartford had to go out of its way - intentionally, recklessly, or in bad faith - to dream up that possibility. Further, if Hartford's decision on appeal were based on new information, it would certainly have been in Hartford's interest to say that in the decision on appeal – which it did not.  To the contrary, Hartford's appeal decision stated simply "We have completed our review of your appeal and find that Dr. Browdy did have STD coverage as of 8/31/07 when she alleges that she became Totally Disabled." (ROA.862).

### ii. The Defendant was Unjustly Enriched as a result of its Breach of its Fiduciary Duty.

In this case, the Defendant breached its fiduciary duty by materially misleading the Plaintiff that she was not eligible for STD benefits. The Plaintiff, relying on this misrepresentation, began withdrawing her pension benefits early, suffering a substantial loss in the value of her pension. Consequently, the Defendant unjustly benefited by its own misrepresentation and breach of fiduciary duty by offsetting the Plaintiff's LTD benefits by the amount of the Plaintiff's pension payments (which the Plaintiff was compelled to obtain as a direct result of the Defendant's misrepresentation).

In its brief, the Defendant repeatedly asserts that it was not the one who was unjustly enriched, but that the Defendant overpaid the Plaintiff because of the

pension funds that she was receiving, implying that the Plaintiff was unjustly enriched. This is simply erroneous. Dr. Browdy was due her pension after age 65 and her disability benefits before age 65. She applied for retirement payments early because her disability benefits were withheld. Hartford has the money that should have gone to Dr. Browdy. As discussed in more detail below, the Defendant would not have had the right to offset the Plaintiff's LTD benefits but for its prior misrepresentation of the Plaintiff's ineligibility for STD benefits - which compelled the Plaintiff to withdraw her pension funds early. Hartford has kept money that belonged to Dr. Browdy as a result of its misrepresentation and is asking for more to be returned to it. The Defendant's began to withhold all payments of the Plaintiff's LTD benefits in an effort to repay itself for the alleged overpayment. There was an overpayment in this case, but that overpayment was in the form of the Defendant unjustly enriching itself with funds that it was withholding from the Plaintiff due to its offset of benefits in the amount of the Plaintiff's pension payments that arose as a direct result of the Defendant's prior misrepresentation that she had no STD benefit coverage.

## B. Plaintiff's §1132(a)(3) Claim is not Precluded.

In its brief, the Defendant alleges that the Plaintiff's § 1132(a)(3) claim should be precluded because she pled a claim under § 1132(a)(1)(B) in her Complaint. However, this Court held in *Gearlds*, *supra*. at 452, that courts must

focus on the substance of the relief sought and the allegations pleaded, not on the labels used. As discussed herein, the facts of the Plaintiff's Complaint allege a breach of the Defendant's fiduciary duty, actionable by § 1132(a)(3). (ROA.17-29). Based on the allegations of the Plaintiff's Complaint, it is clear that she cannot avail herself of remedies authorized by § 1132(a)(1)(B) as the Defendant has technically complied with the requirements of the plan, despite the misrepresentations, the internal conflict of interest, the unreasonable delay, and the offsetting of her LTD benefits by the amount of her pension payments. Instead, the Plaintiff pursued her breach of fiduciary duty claim to obtain disgorgement and to prevent unjust enrichment as a result of the Defendant's bad acts - not as a result of a misapplication of plan provisions. Therefore, the Plaintiff's claim is properly classified under § 1132(a)(3) as the claim centers on the Defendant's breach of its fiduciary duty and the Plaintiff's damages as a result thereof, not on the Defendant's failure to comply with terms of the LTD policy.

### i.  Defendant's Misstatements of Fact

In its brief, the Defendant makes several misstatements of fact in an attempt to support its argument that the Plaintiff's § 1132(a)(3) claim is precluded. First, the Defendant erroneously suggests in its brief that the Plaintiff's Complaint only alleges facts in support of a § 1132(a)(1)(B) claim. That is incorrect. In so arguing, the Defendant wholly ignores the allegations in the Plaintiff's Complaint regarding

11

the Defendant's breach of its fiduciary duty. (See ROA.17-29). Specifically, the Defendant fails to recognize that the facts contained in paragraphs 18-47, 49-51, 55-57, and 59-60 of the Plaintiff's Complaint support a § 1132(a)(3) claim as they support an unreasonable delay, the Defendant's internal conflict of interest, a misrepresentation of the Plaintiff's eligibility for STD benefits, and an unjust enrichment - not a misapplication of plan provisions. In fact, the Plaintiff's Complaint does not contain facts that support a claim under § 1132(a)(1)(B) for the recovery of ill-gotten profits resulting from the Defendant's misrepresentation of the Plaintiff's ineligibility for STD benefits; the appropriate remedy for the Defendant's actions is under § 1132(a)(3). Importantly, the Plaintiff is not attempting to pursue simultaneous remedies under § 1132(a)(1)(B) and § 1132(a)(3). The Plaintiff is instead only pursuing her breach of fiduciary duty claim under the proper ERISA section, § 1132(a)(3),[3] thus distinguishing the cases cited by the Defendant. In addition, in this case, unlike the cases cited by the Defendant, the Plaintiff had two plans (STD and LTD). The Defendant's breach of fiduciary duty occurred with respect to the STD plan, which in turn created an unjust enrichment under the LTD plan.

---

[3] While the Plaintiff recognizes that her Complaint contains a citation to ERISA § 1132(a)(1)(B) while also alleging a breach of fiduciary duty claim, the Plaintiff respectfully represents that the determination of appropriate relief needs to be based on the facts of the pleading.

Second, at pages 8-9 of its brief, the Defendant erroneously claims that it had the right to offset the Plaintiff's benefits by the amount of her pension fund even if she did not apply for payments from her retirement plan. However, this assertion is not supported by the facts and relevant language of the plan (which the Defendant fails to even cite) and is completely erroneous. As previously briefed, the Plaintiff's pension fund is a retirement benefit that she would not have withdrawn but for the Defendant's misrepresentation of her ineligibility for STD benefits. The language of the LTD plan in question only entitles the Defendant to offset for retirement benefits that are actually paid to the ERISA beneficiary. (ROA.335-36). Therefore, if the Plaintiff had not withdrawn her pension early, the Defendant would have no right to the offset for these payments per the language of the ERISA plan. The plan language that would allow an offset for the mere existence of benefits pertains only to the existence of benefits for disability. (ROA.335-36). There is no material fact that could have been the basis of a claim that the Defendant could offset under the terms of the LTD plan for the mere existence of Plaintiff's pension benefits had she not actually received these pension payments (due to the Defendant's misrepresentation). (ROA.425-37 - Hartford's Statement of Uncontested Facts).[4]

---

[4] In Hartford's Uncontested Fact #6, it cites the policy language in the STD policy that would allow for such offset, but there is no material fact contending that this policy language is met – i.e., that the retirement plan from which Dr. Browdy received payments was a plan that provided

13

The Plaintiff is perplexed by the Defendant's assertions at pages 8-9 regarding its right to offset the Plaintiff's pension payments even if she did not receive them. The material facts at issue relate to Dr. Browdy's *receipt* of pension payments, not the mere existence of a retirement plan. (ROA.425-37 - Hartford's Statement of Uncontested Facts, ¶ 7-8 (with underlining by Hartford), 11, 14, 16, 18, 27, 29, 38-46). Indeed, this assertion by Hartford was anticipated by the Plaintiff at the time of the Complaint and was the basis for the Plaintiff's assertions of facts in support of a potential § 1132(a)(1)(B) claim in her Complaint. (ROA.26 at ¶ 45). Specifically, the potential § 1132(a)(1)(B) claim asserted by the Plaintiff in her Complaint anticipated that the Defendant may contend that it could offset for her pension benefits regardless of whether or not she withdrew from it and received payments. However, Hartford did not make the contention that Dr. Browdy's pension was a benefit for loss of income as a result of a period of disability as would have been required under the STD and LTD policies to offset for the mere existence of the pension. (ROA.335-36, 339-40, 342). That would have been a dispute about the application of the policy language, but that dispute did not materialize and did not give rise to the summary judgment at issue here. Hartford offset benefits based upon the pension payments actually received by Dr. Browdy. While these other facts in the Plaintiff's Complaint could have been a

benefits for the period of disability such that the mere existence of the plan was enough to allow offset.

viable claim under § 1132(a)(1)(B) had the Defendant taken the position that they are now bringing up at pages 8-9 of its brief, this position was never asserted by the Defendant on the cross motions for summary judgment before this Court.

If the Plaintiff had pursued this § 1132(a)(1)(B) claim, this case would have been a completely different controversy over a completely different amount of money - had the Defendant been able to offset for the potential value of the Plaintiff's pension payments, as opposed to the amount that she actually received. Moreover, the Plaintiff would not have been able to argue that she was compelled to withdraw her pension if the Defendant could have offset regardless of whether or not she received pension payments or not. However, this is not the case and the Defendant is simply trying to misguide this Court into erroneously viewing the Plaintiff's claim as a dispute over plan language as opposed to a claim for recovery of ill-gotten profits.

This is the very crux of the Plaintiff's § 1132(a)(3) claim. This is not a claim for the payment of benefits due under the terms of the plan, but instead a claim for disgorgement of the Plaintiff's benefits as a result of the Defendant's earlier misrepresentation with regard to STD coverage.

### ii. The Plaintiff's § 1132(a)(3) Claim is not a Repackaged § 1132(a)(1)(B) Claim.

In its brief, the Defendant claims that the Plaintiff's § 1132(a)(3) claim is a repackaging of an § 1132(a)(1)(B) claim and therefore should be dismissed.

However, in so arguing, the Defendant erroneously misconstrues the Plaintiff's claim and focuses only on a narrow portrayal of the Plaintiff's § 1132(a)(3) claim. Specifically, the Defendant attempts to make it look as though the Plaintiff's claim for disgorgement of the withheld LTD benefits is somehow an § 1132(a)(1)(B) claim. However, this argument erroneously focuses on the withheld LTD benefits as being benefits due under the terms of the policy - § 1132(a)(1)(b) - as opposed to the withheld LTD benefits being ill-gotten profits resulting from the Defendant's misrepresentation to the Plaintiff - § 1132(a)(3). This distinction is very important, especially considering the fact that the amount sought by the Plaintiff is the amount that the Defendant withheld from the Plaintiff's LTD benefits.

As previously briefed by the Plaintiff, the Defendant would not have obtained the offset of the Plaintiff's LTD benefits but for the Defendant's misrepresentation of the Plaintiff's ineligibility for STD benefits. An § 1132(a)(1)(B) claim is not viable for this money as the ERISA plan in this case specifically allows for the offset of retirement benefits that are being paid to the Plaintiff. However, this money is the basis for the Plaintiff's § 1132(a)(3) claim as the Defendant's withholding of this amount is an unjust enrichment resulting from its earlier breach of fiduciary duty with regard to the STD coverage. This claim is not a repackaging of an § 1132(a)(1)(B) claim as it is not a disagreement over plan language as Hartford could technically offset the Plaintiff's LTD benefits by the

16

amount of pension that was being paid. Instead, the Plaintiff brings this § 1132(a)(3) claim in part to obtain a disgorgement of ill-gotten profits to prevent the Defendant's unjust enrichment. Simply put, the Defendant should not be able to profit from its own misrepresentation.

## III.    CONCLUSION

For the foregoing reasons, and for those reasons contained in the Plaintiff's Original Brief, the Plaintiff, Carole K. Browdy, M.D., respectfully requests that this Court reverse the judgment of the district court regarding the Plaintiff's federal law claims and enter judgment in favor of the Plaintiff, as prayed for in her complaint, as amended. In the alternative, the Appellant respectfully requests that this Court reverse the summary judgment of the district court in favor of the Defendant, and remand this case to the district court for trial. The Appellees should be taxed with all costs.

**RESPECTFULLY SUBMITTED,
SMITH LAW FIRM**

/s/J. Arthur Smith, III
J. Arthur Smith, III (Bar No. 07730)
830 North Street
Baton Rouge, LA 70802
Telephone: (225) 383-7716
Facsimile:  (225) 383-7773
Email: jasmith@jarthursmith.com
*Attorney for Jesse J. Bryant*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing appeal brief has this date been electronically filed with the Clerk of Court for the United States Court of Appeals for the Fifth Circuit, and that an electronic copy is provided to counsel for the Defendants-Appellees, Joel P. Babineaux, as a standard function of that electronic filing system.

I further certify that a hard copy of the above and foregoing has this date been mailed via the U.S. Postal Service, postage pre-paid and/or electronic mail to the following:

Joel P. Babineaux
Babineaux, Poche, Anthony & Slavich, L.L.C.
P.O. Box 52169
Lafayette, LA 70505-2169

Baton Rouge, Louisiana, this 14th day of May, 2015.

/s/ J. Arthur Smith, III
J. ARTHUR SMITH, III

18

## CERTIFICATE OF COMPLIANCE

    1. This brief complies with the type-volume limitation of FED.R.    APP. P. 32(a)(7)(B) because:

       ☒    this brief contains 4,190 words, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii), *or*

       ☐    this brief uses a monospaced typeface and contains lines of text, excluding the parts of the brief exempted by FED. R. APP. P. 32(a)(7)(B)(iii).

    2. This brief complies with the typeface requirements of FED. R.    APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P.  32(a)(6) because:

       ☒    this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2007 in Times New  Roman 14 point font, or

       ☐    this brief has been prepared in a monospaced typeface.

Baton Rouge, Louisiana, this 14th day of May, 2015.

                /s/ J. Arthur Smith, III
                J. ARTHUR SMITH, III